# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**703**
**KA 11-01064**
PRESENT: SCUDDER, P.J., SMITH, CARNI, LINDLEY, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                    MEMORANDUM AND ORDER

BRIAN BROWN, DEFENDANT-APPELLANT.

---

JEREMY D. ALEXANDER, UTICA, FOR DEFENDANT-APPELLANT.

BRIAN BROWN, DEFENDANT-APPELLANT PRO SE.

SCOTT D. MCNAMARA, DISTRICT ATTORNEY, UTICA (STEVEN G. COX OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Oneida County Court (Michael L. Dwyer, J.), rendered March 24, 2011. The judgment convicted defendant, upon a jury verdict, of robbery in the first degree (six counts), attempted aggravated murder, aggravated assault upon a police officer and criminal possession of a weapon in the second degree (three counts).

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of, inter alia, attempted aggravated murder (Penal Law §§ 110.00, 125.26 [1] [a] [i]) and aggravated assault upon a police officer (§ 120.11), defendant contends that County Court erred in refusing to suppress his confession because it was obtained in violation of his right to counsel. More specifically, defendant contends that, after being advised of his *Miranda* rights, he invoked his right to counsel by stating to the police investigators, "I don't have an attorney" and "if I can't afford an attorney, will it make a difference?" We reject that contention. The statement "I don't have an attorney" does not constitute an unequivocal request for counsel (*see People v Ward*, 134 AD2d 544, 544-545, *lv denied* 70 NY2d 1012; *see also People v Cotton*, 277 AD2d 461, 462, *lv denied* 96 NY2d 757), nor does a statement from a suspect that he or she cannot afford an attorney constitute such a request (*see People v Mandrachio*, 55 NY2d 906, 907, *cert denied* 457 US 1122). Similarly, the statement, "if I can't afford an attorney, will it make a difference?" was merely "an inquiry about whether or not [defendant] should contact an attorney[, which] does not, without more, constitute an unequivocal invocation of the right to counsel" (*People v Hurd*, 279 AD2d 892, 893; *see People v Vaughan*, 48 AD3d 1069, 1071, *lv denied* 10 NY3d 845, *cert denied* 555 US 910; *People v Williams*, 286 AD2d 918, 919, *lv denied* 97 NY2d 763).

We reject defendant's further contention that his confession was involuntary "in the traditional, pre-*Miranda* sense." There is no evidence in the record that defendant's confession was "obtained from him . . . by the use or threatened use of physical force" by the police (CPL 60.45 [2] [a]; *see People v Kelly*, 309 AD2d 1149, 1151, *lv denied* 1 NY3d 575; *cf. People v Daniels*, 117 AD3d 1573, 1574-1575). Indeed, the DVD of defendant's interrogation shows a well-treated suspect who joked and laughed at times with the investigators, and who was afforded food, drink and opportunities for rest (*cf. People v Guilford*, 21 NY3d 205, 209-213).

Defendant's remaining contention with respect to the admissibility of his confession is that his waiver of *Miranda* rights was not voluntary, knowing and intelligent because one of the investigators told him that he "did not need an attorney." Because defendant "failed to raise this specific contention at the hearing or in his motion papers, this issue is unpreserved for [our] review" (*People v Grace*, 245 AD2d 387, 388, *lv denied* 91 NY2d 941; *see People v Tutt*, 38 NY2d 1011, 1012; *People v Louisias*, 29 AD3d 1017, 1018-1019, *lv denied* 7 NY3d 814). In any event, we conclude that any error in failing to suppress the confession is harmless inasmuch as the proof of guilt is overwhelming and there is no reasonable possibility that the jury would have acquitted defendant if the confession had been suppressed (*see People v Wardlaw*, 18 AD3d 106, 109, *affd* 6 NY3d 556; *see generally People v Crimmins*, 36 NY2d 230, 237). We note that, at the time of his arrest, defendant possessed the gun that was used to shoot the deputy sheriff and fired during the two bank robberies. Defendant also possessed more than $5,000 in cash. Moreover, defendant wrote a letter to the District Attorney while in jail, in which he stated, "The fact of the matter is I broke the law in Oneida County" and that "these crimes I committed [were] done out of love for my mother and desperation for a better life." Finally, defendant matched the description of the person who robbed the banks and shot the deputy sheriff, and he was wearing the same type and color of clothing.

Defendant further contends that the evidence is legally insufficient to establish that he intended to kill the deputy sheriff, which is a necessary element of attempted aggravated murder. We reject that contention as well. "A defendant may be presumed to intend the natural and probable consequences of his actions" (*People v Mahoney*, 6 AD3d 1104, 1104, *lv denied* 3 NY3d 660; *see People v Ford*, 114 AD3d 1273, 1274, *lv denied* 23 NY3d 962), and "[i]ntent may be inferred from conduct as well as the surrounding circumstances" (*People v Steinberg*, 79 NY2d 673, 682; *see People v Kelly*, 79 AD3d 1642, 1642, *lv denied* 16 NY3d 832). Here, defendant's intent to kill may be inferred from the fact that, with a loaded gun in his hand, he extended his arm directly toward the deputy sheriff and fired at least three shots, one of which struck the deputy sheriff in the foot. Viewing the evidence in the light most favorable to the People, as we must (*see People v Contes*, 60 NY2d 620, 621), we conclude that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion" that defendant possessed the intent to kill (*People v Bleakley*, 69 NY2d 490, 495; *see People v Geddes*, 49 AD3d 1255, 1256, *lv denied* 10 NY3d 863; *People v Sherry*, 41 AD3d 1235, 1236, *lv denied* 9 NY3d 926). Moreover, viewing the evidence

in light of the elements of the crime of attempted aggravated murder as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we conclude that the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).  Although defendant testified that he intended only to scare the victim, "it was within the province of the jury to assess [his] credibility and reject [his] testimony" (*People v Mercado*, 113 AD3d 930, 932).

We have reviewed defendant's remaining contentions, including those raised in his pro se supplemental brief, and conclude that they lack merit.

Entered:  August 8, 2014                    Frances E. Cafarell
                                            Clerk of the Court