■ The People of the State of New York, Respondent, v Ronald Hough, Jr., Appellant. [57 NYS3d 780]—

Appeal from a judgment of the Erie County Court (Sheila A. DiTullio, J.), rendered April 8, 2015. The judgment convicted defendant, upon a jury verdict, of robbery in the first degree, attempted murder in the first degree and criminal possession of a weapon in the second degree.

It is hereby ordered that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of robbery in the first degree (Penal Law § 160.15 [2]), attempted murder in the first degree (§§ 110.00, 125.27 [1] [a] [vii]; [b]), and criminal possession of a weapon in the second degree (§ 265.03 [3]). In his main and pro se supplemental briefs, defendant contends that his conviction should be reversed inasmuch as County Court erred in denying suppression of his statements to the police, relief that defendant had sought on the ground that he was detained without reasonable suspicion and questioned without the benefit of *Miranda* warnings. We reject that contention. Based on the evidence adduced at the suppression hearing, we conclude that the court properly found that the stop and brief detention of defendant was, from its outset, a level three encounter under *De Bour* (*see People v De Bour*, 40 NY2d 210, 223 [1976]; *see also People v Martinez*, 80 NY2d 444, 448 [1992]; *People v Hicks*, 68 NY2d 234, 238 [1986]). The court properly determined that the police officers' detection of the odor of burning marihuana emanating from the vicinity of defendant and his walking companion supplied the officers with reasonable suspicion of criminal activity sufficient to warrant stopping both men (*see People v Norman*, 142 AD3d 1107, 1108 [2016], *lv denied* 28 NY3d 1148 [2017]; *People v Lightfoot*, 124 AD3d 802, 803 [2015], *lv denied* 25 NY3d 990 [2015]; *cf. People v Walker*, 128 AD3d 1499, 1500 [2015], *lv denied* 26 NY3d 936 [2015]). Moreover, the officers' level of suspicion was increased when defendant's companion immediately fled and, during the ensuing chase, displayed and discarded a handgun, which was promptly recovered by the officers. The evidence at the suppression hearing established that only at that point was defendant, who had been placed unhandcuffed in the rear of a patrol vehicle after the gun was sighted, briefly questioned before being released.

Moreover, the court properly determined that, to the extent that defendant may have been subjected to custodial questioning with respect to his name and other pedigree information,

defendant's answers to those questions need not be suppressed even though the questions were not preceded by *Miranda* warnings (*see People v Rodney*, 85 NY2d 289, 293 [1995]; *People v Carrasquillo*, 50 AD3d 1547, 1548 [2008], *lv denied* 11 NY3d 735 [2008]). To the extent that defendant may have been subjected to custodial interrogation, meaning questioning or its functional equivalent intended to elicit an incriminating response (*see generally Rhode Island v Innis*, 446 US 291, 300-301 [1980]; *People v Ferro*, 63 NY2d 316, 321-323 [1984], *cert denied* 472 US 1007 [1985]), we conclude that the impact of defendant's unwarned answer to such questioning, i.e., that he did not know his gun-discarding companion, was of minimal impact in demonstrating defendant's guilt of the charged crimes. We therefore further conclude that any error on the part of the court in refusing to suppress that single nonpedigree statement of defendant is harmless beyond a reasonable doubt (*see People v Dean*, 145 AD3d 1633, 1633 [2016]; *see generally People v Crimmins*, 36 NY2d 230, 237 [1975]).

We conclude that defendant's challenge to the sufficiency of the evidence with respect to his intent to kill the victim is unpreserved for our review (*see People v Tyler*, 43 AD3d 633, 633 [2007], *lv denied* 9 NY3d 1010 [2007]; *see also People v Gray*, 86 NY2d 10, 19 [1995]) and, in any event, it is without merit. It is well established that a defendant's "[i]ntent to kill may be inferred from [his] conduct as well as the circumstances surrounding the crime" (*People v Lopez*, 96 AD3d 1621, 1622 [2012], *lv denied* 19 NY3d 998 [2012] [internal quotation marks omitted]), and that a " 'jury is entitled to infer that a defendant intended the natural and probable consequences of his acts' " (*People v Schumaker*, 136 AD3d 1369, 1370 [2016], *lv denied* 27 NY3d 1075 [2016], *denied reconsideration* 28 NY3d 974 [2016]; *see People v Bueno*, 18 NY3d 160, 169 [2011]; *People v Brown*, 120 AD3d 954, 955-956 [2014], *lv denied* 24 NY3d 1118 [2015]). Further, viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence with respect to the issue whether defendant possessed the intent to kill (*see Schumaker*, 136 AD3d at 1371; *Brown*, 120 AD3d at 955-956; *see generally People v Bleakley*, 69 NY2d 490, 495 [1987]).

We further conclude that the testimony of the accomplice was sufficiently corroborated (*see People v Davis*, 28 NY3d 294, 302-303 [2016]; *People v Hilkert*, 145 AD3d 1609, 1609-1610 [2016], *lv denied* 29 NY3d 949 [2017]; *see generally People v Reome*, 15 NY3d 188, 191-192 [2010]; *People v Breland*, 83

NY2d 286, 292-294 [1994]), and we likewise conclude that the jury did not fail to give that testimony the weight it should be accorded on the issue of defendant's identity as the robber and shooter (*see generally Bleakley*, 69 NY2d at 495).

We have considered defendant's remaining contentions raised in his pro se supplemental brief, and we conclude that they are without merit. Finally, the sentence is not unduly harsh or severe. Present—Whalen, P.J., Lindley, DeJoseph, NeMoyer and Curran, JJ.